R. SHISLER FARMS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent ROBERT A. SHISLER and DORIS SHISLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
R. Shisler Farms, Inc. v. Commissioner
Docket Nos. 829-70, 830-70.
United States Tax Court
T.C. Memo 1974-141; 1974 Tax Ct. Memo LEXIS 178; 33 T.C.M. (CCH) 635; T.C.M. (RIA) 74141; June 4, 1974, Filed. homas N. Bantivoglio, Mitchell J. Rabil and Bert W. Hunt, for the petitioners. Alan E. Cobb, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in the Federal income taxes of petitioners as follows: Petitioner
Docket Number
Year
Deficiency R. Shisler Farms, Inc.
829-70
1965
$43,183.66
Robert A. Shisler and Doris Shisler
830-70
1965
8,867.40
*180 Upon motion by respondent, unopposed by petitioners, these cases were consolidated for trial, briefs and opinion. The issues for decision are: (1) whether Petitioners Robert A. Shisler and Doris Shisler must recognize gain under section 351(b) of the Internal Revenue Code of 1954[1] upon the transfer of assets to a corporation, R. Shisler Farms, Inc. (hereinafter Shisler Farms); and (2) whether Petitioner Shisler Farms filed its initial income tax return for the taxable year 1965 on the cash or accrual method of accounting. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by reference. Robert A. Shisler and Doris Shisler are husband and wife and reside in Sewell, New Jersey. They filed their joint Federal income tax return for the taxable year 1965 with the district director of internal revenue at Newark, New Jersey. R. Shisler Farms, Inc., was incorporated in 1965 under the laws of the State of New Jersey. It is engaged in the business of collecting garbage from the City of Philadelphia *181 and raising and selling swine. Its principal place of business during 1965 was Sewell, New Jersey and it filed its Federal income tax return with the district director of internal revenue at Newark, New Jersey. From 1947 to 1964 Mr. and Mrs. Shisler operated a hog farm as a proprietorship. The books and records of the proprietorship consisted of bank statements, canceled checks, deposit slips and several spiral notebooks into which Mrs. Shisler recorded the checks received and the bills paid. The accounting system of the proprietorship was maintained on the cash receipts and disbursements method. Upon advice of counsel, Mr. Shisler incorporated the proprietorship as of January 1, 1965. The incorporation was accomplished by the transfer of certain assets of the proprietorship to the corporation in exchange for 100 shares of no-par value common voting stock of the corporation. The adjusted bases for tax purposes and the fair market values of the assets transferred by Mr. Shisler were as follows: Assets
Adjusted Basis
Fair Market Value Cash
$1,000.00
$ 1,000.00
Inventory (Swine)
-0-
117,500.00
Automotive Equipment
392.00
392.00
Farm Equipment
2,922.00
2,922.00
$4,314.00
121,814.00
*182 The respective fair market values of the assets are undisputed. The first meeting of the board of directors of Shisler Farms was held on January 2, 1965, in the offices of the Shislers' attorney. At that meeting Robert A. Shisler was elected president and Doris M. Shisler was elected secretary-treasurer by the board of directors consisting of Robert A. Shisler, Doris M. Shisler, Robert A. Shisler, Jr. and William A. Shisler - the latter two individuals being the older sons of Robert and Doris Shisler. Among the resolutions unanimously adopted at the January 2, 1965, meeting of the board of directors were the following: WHEREAS, The following offer has been made to the corporation in consideration of the issuance of full paid and non-assessable shares of the corporation: A transfer to the corporation by Robert A. Shisler of all of the inventory of pigs, together with equipment, feed and other like items of personal property used in the business now conducted by Robert A. Shisler under the name of R. Shisler Farms, an individual proprietorship in exchange for transfer to him of 100 shares of capital stock of the corporation. Such stock to include the stock subscribed by *183 the incorporators, assignments of which are represented by the transfer of subscription annexed to the minutes of the meeting of the incorporators as well as a transfer of subscriptions annexed thereto. WHEREAS, In the judgment of this Board of Directors of this corporation said offer is good and sufficient consideration for the shares demanded therefor and necessary for the business of this corporation. Now, therefore, be it RESOLVED, That the aforesaid offer be and it is hereby accepted and that the President and Secretary of this corporation be and they hereby are authorized and directed to execute in the name and on behalf of this corporation and under its corporate seal any agreement or agreements that may be necessary in accordance with said offer FURTHER RESOLVED, That the President and Secretary be and they are hereby authorized and directed to issue and deliver in accordance with said offer certificates of full paid and non-assessable shares of this corporation to the said Robert A. Shisler, excepting the qualifying shares held by Doris M. Shisler and Robert A. Shisler. Immediately thereafter, Robert A. Shisler presented to the Board transfers of 33 shares of *184 the said capital stock (including the two qualifying shares held by Doris M. Shisler and Robert A. Shisler, Jr.) reflecting the transfer of 18 shares to Doris M. Shisler, his wife, 5 shares to Robert A. Shisler, Jr., his son, 5 shares to William A. Shisler, his son and 5 shares to Robert A. Shisler "as custodian for Jean A. Shisler under the New Jersey Uniform Gifts to Minors Act". Thereupon motion duly made, seconded and unanimously carried, it was FURTHER RESOLVED, That the President and Secretary be and they are hereby authorized and directed to issue and deliver in accordance with the said transfer certificates reflecting the names of the donees-transferees. Prior to the year 1965 when Petitioner Robert Shisler incorporated the proprietorship, he employed a local accountant to prepare his annual Federal income tax returns. The 1964 Federal income tax return was prepared and filed on the cash method of accounting.
After the incorporation of the proprietorship in January 1965, petitioners employed a firm of certified public accountants to prepare the 1965 Federal income tax return of Shisler Farms and the 1965 return for Mr. and Mrs. Shisler. The Shislers have little, if *185 any, knowledge of accounting and rely completely upon their accountant for the manner of preparation of the income tax returns. Between January and March of 1966 the accountant obtained the checkbook stubs, canceled checks, deposit books and deposit slips from the Shislers in order to begin preparation of the 1965 corporation income tax return. He was also instructed to prepare a financial statement of the corporation to be used for securing a bond to do business with the City of Philadelphia and to be used for applying for a bank loan. The accountant examined the January 2, 1965, minutes of the corporation in order to determine the consequences of the transfer of assets from Robert Shisler to the corporation. He reconstructed an opening balance sheet for 1965 because Shisler Farms maintained no books of account from which a statement could be prepared. Based upon the information available to him at the time, the accountant prepared a work sheet which included the following opening entries: Assets
Amount Cash
$ 1,000.00
Inventory
117,500.00
Automotive Equipment
$13,674.00
Less: Reserve
13,282.00
392.00
Farm Equipment
4,475.00
Less: Reserve
1,553.00
2,922.00
$121,814.00
*186 The opening entry on the "Capital" side of the balance sheet was: Capital Stock
$121,814.00
The capital stock account was then reduced by adjusting journal entry number 7 as follows: Capital Stock
$21,814.00
Due from R. Shisler, Personal
$21,814.00
To write down value of stock to $100,000 It was the practice of the accounting firm to use the term "due from" when, after combining the credit and debit entries on work papers, the resulting figure was a debit amount and to use the term "due to" when the resulting figure was a credit amount; therefore, use of the term "due from R. Shisler, Personal" indicated that the amount was owed by Shisler Farms to Robert A. Shisler. Shisler Farms reported on its 1965 income tax return a gross profit of $42,079.13 computed as follows: Gross receipts or gross sales:
$93,505.74
Less: Cost of Goods Sold (Schedule A)
51,426.61
Gross profit
$42,079.13 [2]
*187 The cost of goods sold was computed on the 1965 return as follows: Schedule A - Cost of Goods Sold
(1)
Inventory at beginning of year
-0-
(2)
Merchandise bought for manufacture or sale
$15,077.61
(3)
Salaries and Wages
36,349.00
(4)
Other costs per books
-0-
(5)
Total of lines 1 thru 4
51,426.61
(6)
Less: Inventory at end of year
-0-
(7)
Cost of Goods Sold (enter here and on line 2, p. 1)
$51,426.61
The 1965 return did not show a beginning or closing inventory in its cost of goods sold section (Schedule A) nor on its balance sheets (Schedule L). The value of the opening and closing inventories for the 1965 corporate tax year was the same - $117,500. The 1965 return of Shisler Farms did not contain any entries on its balance sheet for the beginning of the taxable year and it contained the following for the close of the taxable year (December 31, 1965): Schedule L - BALANCE SHEETS
End of taxable year
Assets
Amount
Total (1)
Cash
$ (5,390.02)
(3)
Inventories: Swine
117,500.00
(5)
Other current assets (attach schedule)
3,900.00
(6)
Loans to shareholders
100.00
(8)
Buildings and other fixed depreciable assets
$27,634.61
(a) Less accumulated depreciation
16,086.12
11,548.49
(12)
Other assets (Incorporation Costs)
382.00
(13)
Total assets $ 128,040.47
LIABILITIES AND CAPITAL
(16)
Other current liabilities (Taxes)
$ 4,720.38
(17)
Loans from stockholders
14,167.08
(20)
Capital Stock: (a) Preferred stock (b) Common stock $100,000
100,000.00
(23)
Earned Surplus and undivided profits
9,153.01
(24)
Total liabilities and capital
$ 128,040.47
*188 The corporation had no accounts receivable and no accounts payable for the taxable year 1965. There was no reference on the return as to whether it was prepared on the cash or accrual method of accounting. The credit balance in the corporation's bank account at the end of 1965 was in the amount of $5,390.02. The reconciliation of that balance is as follows: Reconciliation of Cash Account
Balance per bank statement, 12/31/65
$2,374.27
Outstanding Checks: Date
Ck. No.
Nature of Expenditure
Amount 4/29/65
119
Dues and Subscriptions
$ 25.00
5/31/65
178
Feed
80.00
6/9/65
180
Contributions
25.00
12/14/65
415
Repairs
7.98
12/30/65
416
Feed
420.00
12/30/65
417
Farm Equipment (Tractor)
2,100.00
12/28/65
418
Farm Equipment (Tractor)
500.00
12/30/65
440
Payroll
1,600.00
12/30/65
441
Payroll
1,600.00
1/5/66
445
Feed
274.35
12/30/65
446
Insurance on Life of officers
550.70
12/31/65
447
Repairs
8.25
12/30/65
448
Leasehold Improvements
523.01
12/31/65
449
Contribution
25.00
12/31/65
450
Contribution
25.00
7,764.29
7,764.29
($5,390.02)
On January 4, 1966, the *189 corporation deposited $6,882.38 in its bank account. All of the checks outstanding listed above as of December 31, 1965, were deducted as expenses by the corporation on its return for the taxable year 1965. On its 1965 return Shisler Farms claimed a deduction in the amount of $4,175.75 for taxes paid. Of that total, F.I.C.A. taxes in the amount of $1,459.31 and New Jersey corporation business taxes in the amount of $453.64 were accrued in 1965 as of December 31, and not paid until 1966. The working papers prepared by the accountant reflected the following adjustments made to accrue payroll taxes and miscellaneous expenses payable at the end of the year: Payroll
$1,149.70
Miscellaneous Expense
16.61
Accrued Payroll Taxes
$1,166.31
Shisler Farms claimed a deduction for compensation of its officers in the amount of $16,800 on its 1965 return. In the working papers of the accountant, the following adjustment was made at the close of the 1965 taxable year for compensation payable to Robert A. Shisler: Payroll
$4,019.30
R. Shisler, Personal
$4,019.30
Shisler Farms claimed a deduction for rent in the amount of $5,720 on the 1965 return. *190 The working papers reflected the following adjustment for rent payable to Robert A. Shisler included in the rent deducted on the return: Rent
$5,000.00
R. Shisler, Personal
$5,000.00
The account of Robert A. Shisler on Shisler Farms' books at the end of the taxable year 1965 reflected a credit balance of $14,167.08. This amount was shown in the balance sheet attached to the 1965 return (Schedule L) as a liability under the classification "loans to shareholders." The working papers of the corporation's accountant depicted the balance of the Robert A. Shisler personal account to be composed of the following: Debits
Credits
(1)
Cash of corporate petitioner received by Robert A. Shisler instead of deposited in Shisler Farms bank account [3]
$36,039.21
(2)
Personal expenditures made by Shisler Farms on behalf of Robert A. Shisler
1,510.78
(3)
Amount due to Robert A. Shisler to write down the value of the capital stock to $100,000
$21,814.00
(4)
Disbursements made by Robert A. Shisler from his personal bank account on behalf of Shisler Farms during the 1965 taxable year
20,133.77
(5)
Cash surrender value of life insurance on the life of Robert A. Shisler assigned to the corporation by Robert A. Shisler
750.00
(6)
Unpaid salary payable to Robert A. Shisler by Shisler Farms at the end of the 1965 taxable year [4]
4,019.30
(7)
Unpaid rent payable to Robert A. Shisler by Shisler Farms resulting from Robert A. Shisler having paid the rent of the corporation out of personal funds
5,000.00
$37,549.99
$51,717.07
37,549.99
January 1, 1966 Balance
$14,167.08
*191 The examination of Shisler Farms' 1965 return by the Internal Revenue Service consisted of meetings with the accountant who prepared the return. The Shislers never met with the examining revenue agent nor were the informal records maintained by the Shislers examined by the Internal Revenue Service. The accrued items deducted on Shisler Farms' 1965 return were erroneously claimed and such errors resulted from the inadvertence of the accountant or his employees. The Shisler Farms' 1966 Federal income tax return reflected the following computation: Schedule A - Cost of Goods Sold (1)
Inventory at beginning of year
$117,500.00
(2)
Merchandise bought for manufacture or sale
22,961.50
(3)
Salaries and wages
50,266.00
(4)
Other costs (attach schedule)
-0-
(5)
Total
$190,727.50
(6)
Less: Inventory at end of year
87,670.00
(7)
Cost of Goods Sold (enter here and on line 2, p. 1)
$103,057.50
*192 The 1966 return utilized beginning and ending inventories in computing its taxable income. The balance sheet of the corporation at the end of 1966 as reported on its 1966 Federal income tax return (Schedule L) was as follows: ASSETS
AMOUNT Cash
$ 6,078.39
Inventories - swine
87,670.00
Other current assets
8,183.00
Buildings and other fixed depreciable assets
$ 34,141.46
Less accumulated depreciation
4,690.38
29,451.08
Other assets - Incorporation Costs
286.50
Total assets
$131.668.97
LIABILITIES AND CAPITAL
Other current assets - Taxes
$ 4,557.10
Loans from stockholders
5,860.28
Capital stock: Common stock
100,000.00
Retained earnings - unappropriated
21,251.59
Total liabilities and capital
$131,668.97
The 1966 return was prepared by the same accountant who prepared the 1965 return and was prepared on the accrual method of accounting. The vast majority of the clients of the accounting firm were accrual method taxpayers and Shisler Farms was the only farming client of the firm. The Shislers did not examine the 1965 return of Shisler Farms to determine the method of accounting employed and probably could not have *193 determined the method used had they made such an examination. In his statutory notice of deficiency the Commissioner determined that Mr. and Mrs. Shisler realized a gain of $117,500 from the transfer of assets to Shisler Farms in exchange for 100 shares of its stock and a loan of $21,814 and that the gain was recognized to the extent of $21,814. In his brief respondent revised his computations and now contends that the gain recognized was $21,041.46. The Commissioner, in his statutory notice of deficiency, determined that Shisler Farms elected to use the "farm-price" method of valuing inventories for the taxable year 1965, and because the inventories had a basis of $21,814 (the amount of gain initially determined to be recognized in the transfer) that cost of goods sold should be reduced (and taxable income increased) by the net of the fair market value of the ending inventory ($117,500) and the basis of the beginning inventory ($21,814), or $95,686. Respondent revised his computations on brief to conform to the recomputed recognized gain with the result that he now contends that cost of goods sold was overstated and taxable income thereby understated in the amount of $96,458.54. *194 ULTIMATE FINDINGS OF FACT When Robert A. Shisler transferred assets to Shisler Farms he received in exchange only the common voting stock of Shisler Farms and no debt was created at the time of the transfer. Shisler Farms did not elect to use the "farm-price" method of valuing inventories on its initial income tax return for the taxable year 1965 and Shisler Farms elected to file such return on the cash method of accounting. OPINION In January 1965, Robert A. Shisler transferred the assets of his hog farm business to a corporation, Shisler Farms, in exchange for all of the issued voting stock of that corporation. Respondent contends that Mr. Shisler received not only voting stock but also an obligation of the corporation to pay him $21,814. Petitioners contend that no such obligation or debt was created at the time of the transfer. The issue is one of fact and there is no dispute as to the resulting tax consequences. The transfer qualifies under section 351 and if a debt were created upon the transfer, petitioners must recognize a gain under section 351(b) in the amount of $21,041.46. We conclude that no such debt was created. The only evidence upon which respondent *195 can rely are accountant's working papers from which the 1965 corporation income tax return was prepared. The entry on the working papers was for the purpose of reducing the capital stock account from $121,041.46 to $100,000. The entry is probably erroneous because the stock issued by Shisler Farms was no-par value stock. In any event there is no evidence that the parties intended to create a debt. The corporate minutes reflecting the transfer of assets in exchange for the stock reveal no such intention; there is no promissory note and the books and records of the corporation reflect no account payable to Mr. Shisler. We, therefore, find that no debt was created and Robert A. Shisler received only the controlling voting stock of Shisler Farms when he transferred the assets of his hog farm business in January 1965. Accordingly, no gain must be recognized by reason of the transfer. In the case of Shisler Farms, the Commissioner determined that the "farm-price" method of valuing inventory was used or should have been used by Shisler Farms in filing its initial income tax return for the taxable year 1965. His determination rests upon the 1965 return being filed on the accrual *196 method of accounting. Petitioners contend that the return was filed on the cash method of accounting. The issue is, therefore, one of fact. The return form does not indicate whether it is filed under the cash or accrual method. No space is provided on the form to indicate such intention. In computing the cost of goods sold no entries were made on the return form for either beginning or ending inventories. The parties stipulated the composition and value of the inventories but there is no evidence that Shisler Farms maintained any inventory records. The method of accounting used in filing an income tax return is the method of accounting the taxpayer employs in keeping his books unless the method does not clearly reflect income. Sec. 446, Internal Revenue Code. Section 1.446-1, Income Tax Regs., reiterates the Code provision and explains the various methods. The portions of particular application here are as follows: (a) General rule. (1) Section 446(a) provides that taxable income shall be computed under the method of accounting *197 on the basis of which a taxpayer regularly computes his income in keeping his books. The term "method of accounting" includes not only the over-all method of accounting of the taxpayer but also the accounting treatment of any item. Examples of such over-all methods are the cash receipts and disbursements method, an accrual method, combinations of such methods, and combinations of the foregoing with various methods provided for the accounging treatment of special items. * * * Except for deviations permitted or required by such special accounting treatment, taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. For requirement respecting the adoption or change of accounting method, see section 446(e) and paragraph (e) of this section. [Emphasis supplied.] * * * (c) Permissible methods - (1) In general. Subject to the provisions of paragraphs (a) and (b) of this section, a taxpayer may compute his taxable income under any of the following methods of accounting: (i) Cash receipts and disbursements method. Generally, under the cash receipts and disbursements method in the computation *198 of taxable income, all items which constitute gross income (whether in the form of cash, property, or services) are to be included for the taxable year in which actually or constructively received. Expenditures are to be deducted for the taxable year in which actually made. For rules relating to constructive receipt, see section 1.451-2. For treatment of an expenditure attributable to more than one taxable year, see section 461(a) and paragraph (a) (1) of section 1.461-1. (ii) Accrual method. Generally under an accrual method, income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. Under such a method, deductions are allowable for the taxable year in which all the events have occurred which establish the fact of the liability giving rise to such deduction and the amount thereof can be determined with reasonable accuracy. The method used by the taxpayer in determining when income is to be accounted for will be acceptable if it accords with generally recognized and accepted income tax accounting principles and is consistently used by the taxpayer *199 from year to year. For example, a taxpayer engaged in a manufacturing business may account for sales of his product when the goods are shipped, when the product is delivered or accepted, or when title to the goods passes to the customer, whether or not billed, depending upon the method regularly employed in keeping his books. Likewise, the extent to which indirect costs shall be included in computing cost of goods sold depends upon the method used by the taxpayer in treating such items in keeping his books. A farmer is entitled to report his income under the cash method or accrual method. Sec. 1.61-4, Income Tax Regs. If the farmer uses the accrual method of accounting he must utilize inventories to determine his gross income. Sec. 1.61-4(b), Income Tax Regs. A farmer may make his return upon an inventory method instead of the cash receipts and disbursement method. Sec. 1.471-6, Income Tax Regs. The inventory may be valued under the "farm-price" method or the "unit-livestock" method. Respondent contends *200 that Shisler Farms determined its inventory under the "farm-price" method and because the beginning and ending inventories were identical in amount no entries for inventories were made on the return for 1965 in computing cost of goods sold. He concludes that Shisler Farms filed the return for 1965 on the accrual method because accrued items were deducted. Shisler Farms contends it intended to file the 1965 return on the cash method and the accountant under whose supervision the return was prepared, admits that deductions of the accrued items was inadvertence on his part or on the part of his employees. Prior to incorporation the Shislers operated a business, identical to that of the corporation, as a proprietorship on the cash method of accounting. They had no knowledge of accounting. The cash method is the most simple and understandable method and we believe that they intended the corporation to maintain its books and file its returns under the cash method. No journals were maintained for accounts receivable or accounts payable. The transition from the proprietorship to the corporate form was so informal in bookkeeping matters that the Shislers operated the corporation out of *201 thier individual bank account for the first half of 1965. The accounting firm who prepared the return had no other clients in the livestock business and most of its corporate clients used the accrual method of accounting. Respondent points to not only the accrued items deliberately deducted by the accountant but also to items represented by checks written at the end of the year when the funds in the bank account were insufficient to cover them. A deposit of receipts was made on the first business day of 1966 which exceeded the outstanding checks and we believe that Mrs. Shisler didn't notice that she was overdrawing the bank account when she wrote the checks. There is no evidence that any of the checks were returned due to insufficient funds. We conclude that the officers of Shisler Farms intended that the initial return of the corporation be filed under the cash method. There was nothing on the return form to indicate that it was not. See Trapp v. Jones, 87 F. Supp. 415 (W.D. Okla., 1949), reversed on another issue 186 F.2d 951 (C.A. 10, 1950&: M. D. Rowe, 7 B.T.A. 903 (1927). We, therefore, hold that Shisler Farms elected to *202 file its initial income tax return for the taxable year 1965 on the cash method of accounting. Respondent relies upon cases which are distinguishable. In Ezo Products Co., 37 T.C. 385 (1961), petitioner was incorporated to succeed to the business of a partnership which had maintained its books and filed its returns on the cash method of accounting. The Commissioner determined that because sales of merchandise were an income-producing factor of the taxpayer, inventories must be used in computing income and the accrual method must be employed. The taxpayer argued that because the Commissioner had accepted the returns of the partnership on the cash method that he could not require the corporation to report under the accrual method. The case is not in point because the regulations applicable here permit Shisler Farms to employ the cash method ( sec. 1.61-4, Income Tax Regs.), and the instant case is not based upon acceptance of the method employed by the proprietorship but instead whether the corporation elected the cash method. Charles D. Mifflin, 24 T.C. 973 (1955), involved a taxpayer who maintained the books of his proprietorship *203 on the accrual method of accounting but filed his returns on the cash method. He maintained inventories which were utilized in computing cost of goods sold on the returns. We held that the taxpayer must file returns under the method he maintains his books and records. That case is obviously distinguishable on the facts as is All- Steel Equipment, Inc., 54 T.C. 1749 (1970), which involved the method of valuing inventory to clearly reflect income. Respondent also relies upon Paul H. Travis, 47 T.C. 502 (1967), affd. 406 F.2d 987 (C.A. 6, 1969). The taxpayer accounted for and reported its income on the cash method and its expenses on the accrual method and the Commissioner determined that the method did not clearly reflect income. We held that the method employed did not clearly reflect income. That is not the question in the instant case as we have pointed out above. Accrued expenses were deducted by Shisler Farms as a result of the inadvertence of its accountant and insufficiency of funds in its bank account. Shisler Farms had no practice nor intent to claim deductions on the accrual method. Respondent has not, in the alternative, disallowed *204 any of the accrued expenses deducted on the Shisler Farms return for 1965; therefore, we will not consider such disallowance. Decisions will be entered for the petitioners. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. The total gross income reported for taxable year 1965 was $70,198.93 consisting of profits of $42,079.13, and net gains of $28,119.80. The net gains resulted from the sale by Shisler Farms of certain breeding stock which qualified as sec. 1231 assets. ↩
3. During the first half of its first year of corporate existence, 1965, Shisler Farms had no bank account. Therefore, entries No. (1), (4) and (7) apparently reflect the use of the personal bank account of the Shislers. ↩
4. The board of directors, on January 2, 1965, authorized a salary of $1,000 per month to Robert A. Shisler for managerial services. ↩